UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| MARGARET W. MCCLOUD, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. ) | Civil Action No. 2:11-cv-0069<br>Judge Wiseman/Brown |

To:    The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI), as provided under Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge are Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 15, 16, 17). The Magistrate Judge has also reviewed the administrative record ("Tr."). (Docket Entry 11). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **DENIED**.

## I. INTRODUCTION

Plaintiff filed the relevant application for SSI on December 31, 2007 with an alleged onset date of May 22, 2007. (Tr. 144). A prior claim for disability benefits was denied on November 27, 2007. (Tr. 92). Plaintiff's claims were denied initially and upon reconsideration. (Tr. 101, 108). A hearing was held on November 10, 2009 before Administrative Law Judge ("ALJ") Jack B. Williams. (Tr. 28-50). The ALJ denied Plaintiff's application in a decision dated November 25, 2009. (Tr. 13-23).

1

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since December 11, 2007, the application date (20 CFR 416.971 *et seq*.).
2. The claimant has the following combination of severe impairments: osteoarthritis, mild degenerative disc disease, fibromyalgia, gastroesophageal reflux disease, mild shortness of breath, bipolar disorder with psychotic features, anxiety, panic disorder with agoraphobia, and depression (20 CFR 416.920(c)).
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she can stand or walk for 2 to 6 hours per day and sit 8 hours per day; she can relate superficially with others and concentrate and attend to simple as opposed to complex tasks; and she has average IQ.
5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
6. The claimant was born on August 28, 1955 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).
7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).
8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
10. The claimant has not been under a disability, as defined in the Social Security Act, since December 11, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-23).

The Appeals Council denied Plaintiff's request for review on May 27, 2011. (Tr. 1-3).

This action was timely filed on July 5, 2011. (Docket Entry 1).

## II. REVIEW OF THE RECORD[1]

On December 6, 2007, Plaintiff visited Putnam County Health Department due to a fall two weeks prior. (Tr. 398-401). She also requested help managing her fibromyalgia and arthritis. *Id*.

From 2008 through 2009, Plaintiff received mental health care at Plateau Mental Health Center. On January 8, 2008, she described her depression as an 8 on a 10-point scale. She described recent hallucinations, but she was able to get out of the house and spend time with family over the holidays. (Tr. 284). On January 16, 2008, she noted that her mood swings were not as bad as usual, and the medications were helping her anxiety. She was still hearing voices and seeing people who weren't there, but she had a reduced number of panic attacks. (Tr. 312).

On April 1, 2008, she described her depression as a 10 out of 10 on the depression scale. She noted that severe issues with fibromyalgia were causing her to stay at home. (Tr. 367). On April 15, 2008, she reported continued hallucinations and a recent suicidal ideation. She was worried over financial issues. (Tr. 354). Two weeks later, on April 29, Plaintiff noted she still hears voices and sees shadows, but her counselor described her as showing progress. (Tr. 355).

On June 3, 2008, Plaintiff's next attended appointment, she noted that she was an 8 on a 10-point depression scale. She still suffered from auditory hallucinations but had not had visual since her last appointment. Her memory had gotten worse recently. (Tr. 358). On June 12, 2008, Plaintiff reported visiting her mother in the nursing home. She noted she was somewhat improved today but had had a bad week, with hallucinations and a panic attack. She stated her recent medications were more helpful than anything in the past. (Tr. 363).

---

[1] Because Plaintiff's previous claim was denied, only medical evidence after the protective filing date, December 11, 2007, is relevant.

Plaintiff returned to Plateau Mental Health Center on August 7, 2008 and reported she was "doing pretty good." Her new medication dosage was effective, and she was "pretty leveled out" with no hallucinations or paranoia. (Tr. 420). On August 18, 2008, she noted daily depression and having issues attending appointments due to her depression and agoraphobia. Her lack of an income continued to be an issue and cause stress in her living situation. (Tr. 411).

On September 15, she reported "feeling better" but noted she still has hallucinations of her deceased father. Her counselor observed burns on her left thumb and finger which, combined with weight loss and reported confusion, led her to suspect substance abuse. Plaintiff stated she had not used drugs in over a year. (Tr. 412). At her October 2, 2008 appointment, Plaintiff stated she does not get out of her house and had not been out in public since her last session. The burns on her fingers had healed somewhat, and her provider required a urine drug screen to refill Plaintiff's prescriptions for Ambien and Valium. Plaintiff did not want to undergo a drug screen and admitted to smoking crack cocaine at times. (Tr. 423). At an appointment on November 18, 2008, Plaintiff denied drug use since the last visit. (Tr. 425).

On January 27, 2009, Plaintiff described her moods as kind of down. She went a few days without medications. She noted that she was waiting to receive disability because the man she was living with was waiting for her to get it and was mean and verbally abusive at times. (Tr. 427). Plaintiff had a CRG assessment on the same date that measured her GAF at 45.[2] (Tr. 347-

---

[2] The Global Assessment of Functioning test is a
> subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). . . . A GAF of 41 to 50 means that the patient has serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of

4

40).

Plaintiff returned to treatment at Plateau Mental Health Center on May 14, 2009, when she reported her anxiety being worse than it has been in a long time and requested a change in her medication. (Tr. 429). On June 2, she reported hearing sirens occasionally and an increase in anxiety. (Tr. 431). On July 28, she noted she was doing well on her current medications, and her sleep and appetite were good when taking medications. However, she was not always compliant and recently ran out. She also refused counseling. (Tr. 434).

C. Warren Thompson, Ph.D., prepared a psychiatric review technique and mental residual functional capacity ("RFC") assessment dated February 21, 2008. (Tr. 315-32, 341-42). He believed Plaintiff had moderate restrictions in maintaining social functioning and in maintaining concentration, persistence, or pace. (Tr. 329). He believed Plaintiff could remember and understand simple and detailed instructions; would have some but not substantial difficulty in maintaining concentration, persistence, or pace; would have difficulty interacting with others but could do so; and would have some but not substantial difficulty adapting to change. (Tr. 343).

Jerry Lee Surber, M.D., performed a consultative examination of Plaintiff on March 8, 2008 (Tr. 345-48). Dr. Surber noted Plaintiff had a full and unlimited range of motion, with no gross asymmetry in any major muscle groups and no evidence of muscle wasting. He noted not evidence of redness, palpable swelling, crepitans, warmth, tenderness, deformities, or limitations of motion in joints. Plaintiff was able to do the voluntary squat and stand about one-half of the way down, and she was able to perform straight leg raises and right and left one-leg stance. She was slightly weaker when standing on the left leg rather than the right leg. She was able to

---

moderate difficulty in social or occupational functioning.
*Edwards v. Barnhart*, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich.2005).

perform straightaway, tandem, and heel-toe walks, and there was no palpable popliteal cyst on the left or right posterior knee area. She experienced no shortness of breath during the exam. Dr. Surber noted no limitation regarding Plaintiff's functional mobility of any of her areas of complaint or in any of her extremities or joints. She was slightly weaker when standing on the left leg and had a waddling side-to-side gait with no limping component and no assistive device. He believed she had the RFC to lift and carry up to 10-25 pounds up to 1/3 to 2/3 of the workday, to stand or walk two to six hours in an eight-hour workday, and to sit up to six to eight hours in an eight-hour workday.

Nathaniel D. Robinson, M.D., performed an examination of Plaintiff's medical records dated April 4, 2008. (Tr. 333-40). He believed Dr. Surber's medical assessment was overly restrictive compared to his objective findings. He believed Plaintiff could occasionally lift and/or carry up to 50 pounds, could frequently lift and/or carry up to 25 pounds, could stand and/or walk up to six hours, could sit up to six hours, and could occasionally balance. Denise P. Bell, M.D., submitted an RFC that concurred with Dr. Robinson's on August 19, 2008. (Tr. 390-97).

George W. Livingston, Ph.D., prepared a psychiatric review technique and mental RFC dated July 8, 2008. (Tr. 368-85). He noted no significant changes in Plaintiff's medical records since her prior disability decision. He believed she could perform simple tasks with normal supervision, should not be asked to deal directly with the general public, and would do best in a solitary or small group work setting with tasks dealing with objects rather than people.

Dr. Roy Bilbrey examined Plaintiff at her attorney's request and prepared a psychological report dated October 9, 2009. (Tr. 462-67). Plaintiff reported activities of daily living that included cooking breakfast and light meals, washing dishes, vacuuming, dusting, making beds,

6

and washing the laundry. (Tr. 464). She rarely visits others or has visitors. *Id*. He measured her GAF at 50. *Id*. He believed she had marked limitations in her abilities to make judgments on simple work-related decisions, interact appropriately with the public, accept instructions and respond appropriately to criticism, and maintain regular attendance and be punctual. (Tr. 465-67). He also believed she would be absent about three times per month as a result of her psychological symptoms. *Id*.

At her first hearing,[3] on April 4, 2007, Plaintiff testified that she first started having mental problems in 1996 after her brother's death. (Tr. 61). She also suffered from carbon monoxide poisoning caused by her job. *Id*. She has a fear of carbon monoxide poisoning and believes it caused her fibromyalgia. (Tr. 60-61). She quit work after suffering from nerves, panic attacks, and fibromyalgia following the carbon monoxide poisoning. *Id*. She did not leave her house for a year after quitting work. (Tr. 62). Between 1996 and 2004, she had several temporary jobs but would miss too much work and would quit so she would not be fired. (Tr. 64).

Plaintiff goes to therapy appointments once per month. (Tr. 63). She tried to go twice monthly, but panic attacks prevented her from making appointments. *Id*. Going and coming to appointments causes her psychological symptoms to worsen, and any stress causes her panic attacks. (Tr. 64). Medication and counseling do not help much. (Tr. 63). Depression and agoraphobia affect her ability to concentrate, and she cannot concentrate on movies or books. (Tr. 66). Her medical providers write down instructions for her. (Tr. 67).

Plaintiff stated that Dr. Benzahevi was the first physician to prescribe medication for her fibromyalgia. (Tr. 64). She has pain three to four times per month lasting three to four days. (Tr.

---

[3] The Magistrate Judge has not included the testimony of Vocational Expert Edward Moffatt Smith, as it is not relevant to the recommendation on the pending review.

65). Her pain is at an 8 to 9 on a 10-point scale. (Tr. 67). She complained of a Baker's cyst in her left knee, arthritis, and neuritis. (Tr. 65).

In a typical day, Plaintiff watches a lot of television and does light cooking and housework. (Tr. 67). She lives with a friend and has no hobbies. (Tr. 66). She has problems completing household tasks. (Tr. 68).

At her hearing on November 10, 2009, Plaintiff stated she had not worked since April 2004, when she worked for 4 months as a welder at Tutco. (Tr. 31). She also worked as a packer at Russell Stover for a couple of months prior to that. (Tr. 32). She also worked for about four months as a data entry operator at Berkline. *Id*.

Plaintiff was denied benefits in 2007. (Tr. 34). She alleged fibromyalgia and arthritis as new problems in her pending application. *Id*. She takes Neurontin for fibromyalgia and anxiety. *Id*. Her prescription is provided by Plateau Mental Health Center. *Id*. Plaintiff's condition is neither declining nor improving on her current medication. (Tr. 35).

Plaintiff complains that her fibromyalgia causes pain in her arms, shoulders, legs, and back comparable to a dull toothache. (Tr. 35). She can sit for about 15 minutes and stand for 10 to 15 minutes. (Tr. 36). She can lift no more than a gallon of milk. *Id*.

Plaintiff has anxiety attacks "all the time," or three to four times per week. (Tr. 37). She also has visual hallucinations and memory problems. (Tr. 38-39). She has difficulty sleeping, even using medication. (Tr. 41).

Plaintiff gets dressed most days, approximately five days per week. (Tr. 39). She leaves the house to go to counseling appointments, to go to the grocery store twice per month, and to see her mother once per month. (Tr. 37). She gave up her hobbies of writing poems and short stories

8

and reading. (Tr. 40). She can make the bed, vacuum, do dishes, and dust. (Tr. 41). She mows the yard one to two times per month in 15- to 20-minute sessions over two to three days. (Tr. 42).

Plaintiff used crack cocaine for approximately one year in 1996-97. (Tr. 49). She used it on one occasion, noted in her mental treatment records, when a friend came in from Detroit. *Id*. She is an alcoholic and stopped drinking about five years ago. *Id*.

Vocational Expert ("VE") Ernest Brewer noted Plaintiff has previous work history as a machine operator, which is medium and unskilled. (Tr. 43). A hypothetical individual of Plaintiff's age and education and with Plaintiff's past relevant work could not perform Plaintiff's previous work if she were limited to light work with standing or walking two to six hours per day and sitting six to eight hours per day and could relate superficially with others and concentrate and attend to simple as opposed to complex tasks. (Tr. 44). Such a hypothetical individual could perform other jobs with a sit/stand option, including assembler (6,500 jobs in Tennessee/135,000 jobs nationwide); cashier (5,800 jobs in Tennessee/145,000 jobs nationwide); and hand packing (3,900 jobs in Tennessee/90,000 jobs nationwide). (Tr. 44-45). If the hypothetical individual needed extra breaks, she would likely not be employable. (Tr. 46). The sit/stand option would work for someone who can sit only about 15 minutes and stand 10 to 15 minutes. *Id*. If the hypothetical individual were severely limited in her ability to make judgments on simple work related decisions, interact appropriately with the public, accept instructions and respond appropriately to criticisms from supervisors, and maintain regular attendance, the individual would not be able to perform jobs identified. (Tr. 47).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

In her Motion, Plaintiff alleges two errors. First, the ALJ erred in rejecting the opinion of

Plaintiff's treating psychologist at Plateau Mental Health Center and Dr. Bilbrey's report. Second, the ALJ erred in rejecting Plaintiff's reports of disability due to her combined impairments.

A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.  Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

10

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923

---

[4] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C. <u>The ALJ Properly Evaluated the Opinions of Dr. Bilbrey and Plaintiff's Treating Psychologist</u>

Plaintiff argues very briefly that the ALJ erred in rejecting the opinions of Plaintiff's treating providers at Plateau Mental Health Center and Dr. Bilbrey, who provided a consultative opinion after examining Plaintiff. Plaintiff argues that the opinions are consistent with each other and with the medical evidence and Plaintiff's testimony. The Magistrate Judge agrees with the Commissioner that the ALJ had substantial evidence for rejecting portions of these opinions.

An ALJ should give enhanced weight to the findings and opinions of treating physicians since these physicians are the most able to provide a detailed description of a claimant's impairments. 20 C.F.R. § 404.1527(d)(2). Further, even greater weight should be given to a physician's opinions if that physician has treated the claimant extensively or for a long period of time. 20 C.F.R. § 404.1527(d)(2)(I)-(ii). In the case of a nurse practitioner, who is not an "acceptable medical source" within the meaning of 20 CFR §§ 404.1527(d)(2) and 416.927(d)(2), the ALJ need not give the opinion controlling weight. Moreover, if there is contrary medical evidence, the ALJ is not bound by a physician's statement and may also reject it if that statement is not sufficiently supported by medical findings. 20 C.F.R. § 404.1527(d); *Cutlip v. Secretary of H.H.S.*, 25 F.3d 284 (6th Cir. 1994).

12

While the ALJ is not bound by the opinions of Plaintiff's treating physicians, the ALJ is required to set forth some sufficient basis for rejecting these opinions. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). In discrediting the opinion of a treating source, the ALJ must consider the nature and extent of the treatment relationship, the length of the treatment relationship and the frequency of examinations, the medical evidence supporting the opinion, the consistency with the opinion with the record as a whole, the specialization of the treating source, and any other factors which tend to support or to contradict the opinion. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Additionally, it should be noted that a treating physician's statement that the claimant is "disabled" does not bind an ALJ as the definition of disability requires consideration of both medical and vocational factors. 20 C.F.R. § 404.1527(e)(1); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Here, the ALJ clearly articulated his reasons for discounting the opinions of Plaintiff's providers at Plateau Mental Health Center and Dr. Bilbrey. With regard to Plateau Mental Health Center, the ALJ noted that Plaintiff had been feeling better with her medications in 2007 to 2009, with some exceptions. (Tr. 19). Plaintiff was not always compliant with her medications. (Tr. 434). The ALJ also noted Plaintiff's admitted drug use. (Tr. 19, 423). None of Plaintiff's treating providers at Plateau Mental Health Center submitted a statement regarding her ability to do work. In Dr. Bilbrey's report, he noted that Plaintiff is able to do several household chores, including preparing light meals and doing housework. (Tr. 462-67). As the ALJ stated, Dr. Bilbrey also noted that Plaintiff "was capable of thinking in abstract terms and her stream of thought was adequate," with "no indications of any loosening of associations or flight of ideas." (Tr. 20). The ALJ incorporated this information in his assigned RFC.

It is clear from the ALJ's opinion that he adequately addressed the opinions of Plaintiff's treating providers and Dr. Bilbrey, the examining consultant. The ALJ rejected portions of these opinions based on the objective findings in the record, which is appropriate. Therefore, the Magistrate Judge believes the ALJ committed no error here.

D.      The ALJ Properly Evaluated Plaintiff's Credibility

Plaintiff argues, again briefly, that the ALJ improperly assessed her credibility in violation of SSR 96-7p, 1996 WL 374186 (S.S.A. 1996). Plaintiff argues that the ALJ erred by rejecting Plaintiff's reports of disability due to her combined impairments. The Magistrate Judge believes the ALJ properly evaluated Plaintiff's credibility.

An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Walters v. Commissioner of Social Security*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. 404.1529(a)). Like any other factual finding, an ALJ's adverse credibility finding must be supported by substantial evidence. *Doud v. Commissioner*, 314 F. Supp. 2d 671, 678-79 (E.D. Mich. 2003). Here, the Magistrate Judge believes the ALJ properly evaluated Plaintiff's credibility.

The ALJ provided clear reasons for discounting Plaintiff's credibility. (Tr. 20-21). Plaintiff has a history of drug use as recent as October 2008. (Tr. 413, 423). Moreover, Plaintiff's activities of daily living, which include light cooking and general housework, are inconsistent with her description of disabling pain. (Tr. 35-36, 39-42). The ALJ also noted that Plaintiff's treatment notes from Plateau Mental Health Center are inconsistent, and her continued worry about finances indicate the possibility of malingering. (Tr. 20-21). The Magistrate Judge believes the ALJ had

14

substantial evidence for discounting Plaintiff's credibility regarding the degree of her symptoms.

## IV. RECOMMENDATION

For the reasons set forth above, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be **DENIED** and this action be **DISMISSED**.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 7th day of May, 2012.

/S/ Joe B. Brown
JOE B. BROWN
United States Magistrate Judge